Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELLIOTT A. GIBSON, EVAN A. GIBSON, and EDWARD S. GIBSON,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF KIRKLAND, a municipal corporation; KIRKLAND POLICE OFFICERS J. McMILLIAN and J. TROMBLEY; and JOHN DOE KIRKLAND POLICE OFFICERS 1–5,<br><br>Defendants. | No. C08-0937-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion for partial summary judgment (Dkt. No. 32), Defendants' first reply (Dkt. No. 41), Plaintiffs' response (Dkt. No. 42), and Defendants' second reply (Dkt. No. 54).[1] The Court hereby GRANTS IN PART and DENIES IN PART the motion for the reasons explained herein.

---

[1] After the due date for Plaintiffs' response had passed and Plaintiffs had not sought an extension, Defendants asked the Court to consider Plaintiffs' failure to respond as an admission that the partial summary judgment motion had merit. (First Reply 1–2 (Dkt. No. 41) (*citing* Local Rules W.D. Wash. CR 7(b)(2)).) On March 3, 2009, Plaintiffs filed their opposition to Defendants' motion but did not explain why it was over a week late. (*See* Resp. (Dkt. No. 42).) In a second reply, Defendants moved to strike Plaintiffs' response. (Second Reply 1, 2–3 (Dkt. No. 54).) Although the Court is troubled by the untimely response, it does not believe that striking Plaintiffs' brief would be appropriate, so Defendants' motion to strike is DENIED. *See* FED. R. CIV. P. 56(e)(2) (allowing court to enter judgment against party that failed to respond only "if appropriate"). However, Plaintiffs are forewarned that further untimely filings will not be tolerated.

ORDER - 1

## I. BACKGROUND

This case involves a dispute that occurred at the Ford of Kirkland automobile dealership. Because this is a summary judgment motion, the Court describes the facts as alleged by Plaintiffs. In so doing, however, the Court does not mean to suggest that these allegations are true.

Just after midnight on July 10, 2006, Elliott Gibson entered the parking lot of Ford of Kirkland, where he and his three brothers—Edward, Evan, and Brandon—worked as contract night janitors.[2] (Elliott Gibson Interrog. 6–7 (Dkt. No. 43-2 at 3–4).) Defendant Officer McMillian followed him into the lot in her police car and shined a bright light on him. (*Id.* at 6.) She exited her car, began talking on her shoulder radio, and then asked Elliott if he worked at the dealership. (*Id.*) He responded, twice, that he did and held up his hand to show her the keys he had just used to unlock the gate to the garbage and recycling area. (*Id.*) When Officer McMillian just looked at him, Elliott asked if he had made an illegal turn or done something against the law. (*Id.*) She answered no, he had not. (*Id.*) Elliott asked then what he had done to make her stop him. (*Id.*) Officer McMillian replied, "If you are going to be an asshole about it, let me see your driver's license." (*Id.*) When he saw his brother Edward approaching, Elliott took out the dealership keys and told him, "I got this, just take the keys, and go open the buildings and get to work." (*Id.*) Edward, who had watched the police car follow his brother into the dealership, asked Officer McMillian what the problem seemed to be. (Edward Gibson Interrog. 6 (Dkt. No. 43-2 at 13).) Officer McMillian responded, "Your buddy is being an asshole." (*Id.*)

Both Elliott and Edward tried to explain to Officer McMillian that they were night janitors, that they did not wear uniforms because they were subcontracted, that they had keys to the facility

---

[2] Because all three plaintiffs share the same first initial and last name, the Court will refer to each of the Gibson brothers by his first name.

and cleaning equipment in their cars, and that they would call their employer to prove they worked at the dealership. (*Id.*) Officer McMillian, however, was unmoved, neither responding to their explanations nor making any effort to verify that they had cleaning equipment in their cars. (*Id.*)

While Elliott returned to his car to find some identification, Officer McMillian began walking toward Edward and, without warning, started pushing him back with her index finger, shouting for him to back up. (*Id.* at 6–7.) She then ordered Edward to sit in her car. (Elliott Gibson Interrog. 7 (Dkt. No. 43-2 at 4).) Meanwhile, Evan arrived to see what was holding Elliott up. (Evan Gibson Interrog. 6 (Dkt. No. 43-2 at 9).) Worried that the situation was escalating and that the officer had clearly "lost her mind," Edward used his cell phone to call his employer, who asked to speak with the officer. (Edward Gibson Interrog. 7 (Dkt. No. 43-2 at 14).) Edward offered Officer McMillian his phone, explaining, "This is Mr. Wright. We are subcontracting this account from him. He would like to speak with you." (Elliott Gibson Interrog. 7 (Dkt. No. 43-2 at 4).) Officer McMillian yelled, "I don't want to speak with him! I don't want to speak with anyone!" (*Id.*)

Several other police cars pulled into the dealership, and Elliott noticed that his other brother, Brandon, was walking toward them. (*Id.*) When one of the officers, later revealed to be Defendant Officer Trombley, asked what was going on, Officer McMillian pointed to Edward and stated, "He's going to jail." (*Id.*) Officer Trombley immediately rushed Edward, grabbed him by the arm, and pulled him toward Officer McMillian's police cruiser. (*Id.*; Edward Gibson Interrog. 7 (Dkt. No. 43-2 at 14).) Upon reaching the cruiser, Officer Trombley told Edward to put his hands on the hood. (Edward Gibson Interrog. 7 (Dkt. No. 43-2 at 14).) Edward complied, but when he told Officer Trombley that he could not lay his hands flat because he was still holding the keys to the dealership, Officer Trombley began forcing Edward's face down on the hood. (*Id.*) Edward protested that the hood ornament was pushing against his groin. (*Id.*) Seeing this, Evan cried to "take it easy," and

Brandon echoed: "You don't have to do that, he can't go down." (Elliott Gibson Interrog. 7 (Dkt. No. 43-2 at 4); Evan Gibson Interrog. 6 (Dkt. No. 43-2 at 9).) In response, Officer McMillian told the two brothers to "shut up and be quiet." (Elliott Gibson Interrog. 7 (Dkt. No. 43-2 at 4).) Handcuffed and on the ground, Edward said, "It is all right. We have a case." (Evan Gibson Interrog. 6 (Dkt. No. 43-2 at 9).) When Evan responded, "Yeah, we need the money," Officer McMillian stated that Evan would be going to jail as well. (Edward Gibson Interrog. 7 (Dkt. No. 43-2 at 14).) Officer Trombley handcuffed Evan, then turned to Elliott and told him to stand up, which he did. (Elliott Gibson Interrog. 7 (Dkt. No. 43-2 at 4).) Officer Trombley then asked Elliott why he was not obeying Officer McMillian's order to sit down. (*Id.*) Elliott replied, "I did, but you just told me to stand up." (*Id.*) Officer Trombley paused and then put Elliott in a chokehold so tight that he could not breathe and forced him to the ground. (*Id.*) Edward and Evan protested that their brother had not done anything to warrant such treatment, to which Officer McMillian responded, "Shut up, or I'll start tasing all of you." (Edward Gibson Interrog. 7 (Dkt. No. 43-2 at 14).)

Officer McMillian arrested Evan, Edward, and Elliott for obstructing a law enforcement officer.[3] (McMillian Decl. ¶ 16 (Dkt. No. 34 at 5).) The three men were prosecuted, and a jury found them each not guilty. (Edward Gibson Interrog. 8 (Dkt. No. 43-2 at 15).)

**II.  DISCUSSION**

Defendants move for summary judgment on Plaintiffs' claims against the City of Kirkland, as well as Plaintiffs' claims against Officers McMillian and Trombley for excessive force, violation of due process, abuse of process, and outrage. (Mot. 1–2 (Dkt. No. 32).) The Court views the evidence in the light most favorable to Plaintiffs, *see Holley v. Crank*, 386 F.3d 1248, 1255

---

[3] Elliott also received a citation for driving with a suspended license. (McMillian Decl. ¶ 16 (Dkt. No. 34 at 5).) Brandon was not arrested. (*See* Police Report 5 (Dkt. No. 33-2 at 6).)

(9th Cir. 2004), and draws all reasonable inferences supported by the evidence in Plaintiffs' favor, *see Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Defendants have the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If a reasonable fact-finder could find in favor of Plaintiffs on a claim, summary judgment on that claim must be denied. *Id.*

### A.     Claims against City of Kirkland

Defendants move to dismiss the claims against the City of Kirkland as a matter of law because "Plaintiffs have not, and cannot, identify an officially sanctioned policy or practice of the City which caused their alleged constitutional deprivation." (Mot. 1–2 (Dkt. No. 32).) A city is liable under § 1983 if an official policy or custom of the city caused one of its employees to inflict an injury. *See Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). In their response, Plaintiffs concede: "There has been no proof as a result of discovery that there was any custom or policy approving the defendant officers' conduct . . . ." (Resp. 7 (Dkt. No. 42).)

Plaintiffs allege instead that the City of Kirkland "tacit[ly] ratifi[ed the officers' conduct] by allowing a trial on false charges to proceed." (*Id.*) A municipality may be liable for an isolated constitutional violation if the final policymaker "ratified" a subordinate's actions. *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999). To establish ratification, the plaintiff must show that "the triggering decision was the product of a conscious, affirmative choice to ratify the conduct in question." *Haugen v. Brosseau*, 339 F.3d 857, 875 (9th Cir. 2003) (internal quotation marks omitted), *rev'd on other grounds*, 543 U.S. 194 (2004). Ratification can occur, for example, when a police chief expressly approves of the propriety of an unconstitutional investigation, *see Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995), but not when a city manager merely acquiesces to a subordinate's discretionary decision, *see Gillette v. Delmore*, 979 F.2d 1342, 1348

(9th Cir. 1992).

In this case, there is insufficient evidence to reasonably find that the City of Kirkland ratified the officers' conduct. Plaintiffs have alleged various constitutional violations on the part of the individual officers, but nothing in the record suggests that any supervising policymaker was aware of this alleged improper conduct. If the City of Kirkland did not know about the officers' improper conduct, it cannot have ratified it. *See Haugen*, 339 F.3d at 875 (explaining that ratification must be "a conscious, affirmative choice" on the part of the policymaker). Because Plaintiffs have failed to present any evidence that the City of Kirkland ratified the alleged conduct, the Court GRANTS summary judgment as to the § 1983-based claims against the City of Kirkland.

### B. Claims against Officers McMillian and Trombley

Defendants also move to dismiss Plaintiffs' claims for excessive force, violation of due process, abuse of process, and outrage against Officer McMillian and Officer Trombley.

#### 1. Excessive Force

A police officer's use of excessive force during an arrest violates a suspect's Fourth Amendment right to be free from unreasonable seizure.[4] *White v. Pierce County*, 797 F.2d 812, 816 (9th Cir. 1986). Although a police officer's right to make an arrest necessarily includes the right to use some degree of force, *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000), the amount actually used may not be excessive, even when some force is justified, *see Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007). The Fourth Amendment allows a police officer to use only such force as is objectively reasonable under circumstances. *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994). The "reasonableness" of a particular use of force is judged from the

---

[4] Plaintiffs do not specifically allege excessive force in their complaint. (*See* Compl. (Dkt. No. 1).) Plaintiffs do, however, allege that Defendants violated their "duty under 42 U.S.C. § 1983 to provide [P]laintiffs . . . their Fourth Amendment [r]ights." (*Id.* ¶ 21.)

perspective of a reasonable officer on the scene. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Determining whether force is reasonable requires the Court to carefully balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *See Lolli v. County of Orange*, 351 F.3d 410, 415 (9th Cir. 2002). This balancing entails factors such as (1) the severity of the suspect's alleged crime, (2) whether the suspect posed an immediate threat to the officer's safety, and (3) whether he was actively resisting or attempting to evade arrest. *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007). Because this balancing nearly always requires the jury to sift through disputed factual contentions and to draw inferences therefrom, courts should grant summary judgment sparingly in cases involving claims of excessive force. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003).

Defendants move to dismiss Plaintiffs' excessive force claims against Officer McMillian because neither Elliott nor Evan Gibson assert that Officer McMillian used physical force, and the greatest force that Edward Gibson asserts is a finger poke in the chest. (Mot. 1, 7–9 (Dkt. No. 32).) Plaintiffs do not respond to Defendants' motion to dismiss the excessive force claims against Officer McMillian (*see* Resp. 5–6 (Dkt. No. 42)), which the Court construes as an admission that the motion has merit. *See* Local Rules W.D. Wash. CR 7(b)(2). Beyond allegedly jabbing Edward Gibson in the chest with her index finger, the record reveals no physical contact between Officer McMillian and Plaintiffs. (*See, e.g.*, Evan Gibson Dep. 170:9–11 (Dkt. No. 33-3 at 14).) The Court finds that this minimal contact cannot rise to the level of excessive force and, therefore, GRANTS Defendants summary judgment as to any excessive force claims against Officer McMillian.

Defendants also move to dismiss Plaintiffs' excessive force claims against Officer Trombley. (Mot. 1 (Dkt. No. 32).) Evan Gibson concedes that Officer Trombley did not use

excessive force on him. (Evan Gibson Dep. 175:6–8 (Dkt. No. 33-3 at 16)), so to the extent that he makes an excessive force claim, the Court GRANTS Defendants summary judgment on that claim. However, genuine issues of material fact exist regarding whether Officer Trombley used excessive force on his brothers, Edward and Elliott Gibson. (Resp. 5–6 (Dkt. No. 42).)

Drawing all reasonable inferences in Plaintiffs' favor, the Gibson brothers were calm, "maintain[ing] a business-like manner," when Officer Trombley arrived.[5] (Edward Gibson Interrog. 7 (Dkt. No. 43-2 at 14).) Officer Trombley asked Officer McMillian what was going on, and she pointed at Edward, announcing, "He's going to jail." (Elliott Gibson Interrog. 7 (Dkt. No. 43-2 at 4).) According to Plaintiffs, Officer Trombley "immediately rushed" Edward, "grabbed" him, "pulled" him toward Officer McMillian's police car (*id.*), "push[ed]" him down on the car's hood (Edward Gibson Interrog. 7 (Dkt. No. 43-2 at 14)), and "forc[ed]" his groin onto the hood ornament (Evan Gibson Interrog. 6 (Dkt. No. 43-2 at 9)). Edward tried to tell Officer Trombley that he "could not go down in that manner" (Edward Gibson Interrog. 7 (Dkt. No. 43-2 at 14)) because the hood ornament was "hurting him" (Elliott Gibson Interrog. 7 (Dkt. No. 43-2 at 4)). Viewing this evidence in the light most favorable to Plaintiffs, it was only after Officer Trombley again tried to "push[]" Edward's groin into the hood ornament that Edward "stood firm." (Edward Gibson Interrog. 7 (Dkt. No. 43-2 at 14).) Officer Trombley's show of force, thus, could be interpreted to have preceded Edward's "refus[al] to comply." (*See* Second Reply 4 (Dkt. No. 54).) Under these circumstances, balancing the amount of force used against the lack of provocation, a

---

[5] Defendants claim that Officers Trombley and McMillian "found themselves outnumbered by [P]laintiffs, in a remote area of a deserted and closed car dealership, just after midnight." (Second Reply 5 (Dkt. No. 54).) It is not clear from the record when the other officers appeared at the scene. (*Compare* Elliott Gibson Interrog. 7 (Dkt. No. 43-2 at 4) ("Several other police vehicles pulled in behind [Officer Trombley]."), *and* Edward Gibson Interrog. 7 (Dkt. No. 43-2 at 14) ("[Officer Trombley and I] then walked past another male officer on the way to the cruiser and I asked him if he thought I should be roughed up . . . ."), *with* Evan Gibson Interrog. 6 (Dkt. No. 43-2 at 9) ("Other officers arrived on the scene [after Officer Trombley placed Elliott 'in some kind of choke hold']."); *see also* Call for Service Report (Dkt. No. 33-2 at 9–10) (identifying Unit 2P7 arriving at 00:21:18, Unit K95 at 00:25:59, and Unit 2S2 at 00:34:24).)

reasonable jury could find that this use of force was excessive. Therefore, the Court DENIES summary judgment as to Edward Gibson's excessive force claim against Officer Trombley.

A similar analysis applies to Elliott Gibson's claims. Viewing the evidence in the light most favorable to Plaintiffs, after handcuffing Edward and Evan, Officer Trombley walked over to Elliott and told him to stand up, which he did. (Elliott Gibson Interrog. 7 (Dkt. No. 43-2 at 4).) Trombley then asked Elliott why he was not obeying Officer McMillian's command to sit down, to which Elliott answered, "I did, [but] you just told me to stand up." (*Id.*) Officer Trombley allegedly responded by placing Elliott in a "choke hold" so tight that Elliott "couldn't breathe." (*Id.*) If a reasonable jury believed these allegations, they could clearly find that the force used was excessive. Accordingly, the Court DENIES summary judgment as to Elliott Gibson's excessive force claim against Officer Trombley.

### 2. Due Process

Defendants move to dismiss Plaintiffs' substantive due process claims. (Mot. 1 (Dkt. No. 32).) Although the complaint alleges that Defendants violated Plaintiffs' "substantive due process rights under the Fifth and Fourteenth Amendment," it does not explain how those rights were violated.[6] (*See* Compl. ¶ 21 (Dkt. No. 1 at 4).) Furthermore, Plaintiffs fail to respond to Defendants' argument that these claims should be dismissed (*see* Resp. (Dkt. No. 42); Second Reply 3 (Dkt. No. 54)), which the Court construes as an admission that the motion has merit. *See* Local Rules W.D. Wash. CR 7(b)(2). Accordingly, the Court GRANTS Defendants' motion to

---

[6] In the complaint's statement of the facts, Plaintiffs state that Defendants failed to read them their Miranda rights. (Compl. ¶ 15 (Dkt. No. 1 at 3).) However, Plaintiffs do not allege that, as a result of not being read their Miranda rights, they made statements that were used against them in a later criminal proceeding. *See Chavez v. Martinez*, 538 U.S. 760, 772 (2003) ("[Without the introduction of a coerced statement at trial,] failure to read *Miranda* warnings . . . d[oes] not violate [a defendant's] constitutional rights and cannot be grounds for a § 1983 action.").

dismiss Plaintiffs' substantive due process claims.[7]

### 3. Abuse of Process

Defendants also move to dismiss Plaintiffs' abuse of process claims. (Mot. 2 (Dkt. No. 32).) To prove abuse of process, Plaintiffs must show (1) the existence of an ulterior purpose to accomplish an improper objective and (2) a subsequent improper act in the use of the legal process. *See Saldivar v. Momah*, 186 P.3d 1117, 1130 (Wash. Ct. App. 2008). The crucial inquiry for abuse of process is whether the judicial process, made available to ensure the presence of the defendant in court, has been misused to achieve an inappropriate end. *Gem Trading Co., Inc. v. Cudahy Corp.*, 603 P.2d 828, 833 n.2 (Wash. 1979). Defendants argue that Plaintiffs have offered no evidence that Plaintiffs were arrested for an ulterior purpose. (Mot. 22 (Dkt. No. 32).)

Plaintiffs, however, argue that the officers used the criminal legal process "to cover for the use of excessive force and false arrest of [P]laintiffs." (Resp. 8 (Dkt. No. 42).) If a reasonable jury believed Plaintiffs' allegations that the officers (1) used excessive force against Edward and Elliot, and (2) arrested the brothers without probable cause to suggest that they had committed any crime, it would not be unreasonable to infer that the arrest was intended to cover up the use of excessive force. *Batten v. Abrams*, 626 P.2d 984 (Wash. Ct. App. 1981) ("'The ulterior motive or purpose may be inferred from what is said or done about the process . . . .'") (*quoting* W. Prosser, Law of Torts § 121 at 856 (4th ed. 1971)). Because a reasonable jury could conclude that the officers initiated the arrest for an ulterior purpose, the Court DENIES Defendants summary judgment as to Plaintiffs' abuse of process claims.

---

[7] In their response, Plaintiffs seem to argue that their abuse of process claim includes a claim for violation of due process under § 1983. (*Cf.* Resp. 8–9 (Dkt. No. 42) ("A criminal abuse of process is, by definition[,] a denial of procedural due process." (internal quotation marks omitted)).) However, Plaintiffs do not allege violations of procedural due process in their complaint. (*See* Compl. ¶ 21 (Dkt. No. 1 at 4).)

### 4. Outrage

Finally, Defendants move to dismiss Plaintiffs' outrage claims. (Mot. 2 (Dkt. No. 32).) To prove the tort of outrage under Washington law, Plaintiffs must establish that Defendants engaged in extreme and outrageous conduct that intentionally or recklessly inflicted Plaintiffs' severe emotional distress. *See Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003). Plaintiffs now concede that they "were not seriously emotionally injured [in such a way] that would justify a claim for outrageous conduct." (Resp. 7 (Dkt. No. 42).) Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' outrage claims.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the motion for summary judgment as to Elliott and Edward Gibson's excessive force claims against Officer Trombley and as to Plaintiffs' abuse of process claims. The Court GRANTS the motion for summary judgment as to Plaintiffs' § 1983-based claims against the City of Kirkland; Plaintiffs' excessive force claims against Officer McMillian; Evan Gibson's excessive force claim against Officer Trombley; and Plaintiffs' claims for violation of substantive due process and outrage. (Dkt. No. 32.)

DATED this 9th day of April, 2009.

John C. Coughenour
UNITED STATES DISTRICT JUDGE